FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 24, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KERRY F.,<br><br>                          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                          Defendant. | NO. 2:25-CV-0028-TOR<br><br>ORDER GRANTING DEFENDANT'S OPENING BRIEF |

BEFORE THE COURT are Plaintiff's Opening Brief (ECF No. 9) and the Defendant's Opening Brief (ECF No. 17). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Opening Brief (ECF No. 9) is **DENIED** and Defendant's Opening Brief (ECF No. 17) is **GRANTED**.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING DEFENDANT'S OPENING BRIEF ~ 1

1

**STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social

3 Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4 limited: The Commissioner's decision will be disturbed "only if it is not supported

5 by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7 relevant evidence that "a reasonable mind might accept as adequate to support a

8 conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9 substantial evidence equates to "more than a mere scintilla[,] but less than a

10 preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11 standard has been satisfied, a reviewing court must consider the entire record as a

12 whole rather than searching for supporting evidence in isolation.  *Id.*

13    In reviewing a denial of benefits, a district court may not substitute its

14 judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

15 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16 rational interpretation, [the court] must uphold the ALJ's findings if they are

17 supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

19 ALJ's decision on account of an error that is harmless." *Id.*  An "error is harmless

20 where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* at

1    1115 (citation omitted).  The party appealing the ALJ's decision generally bears

2    the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396,

3    409-10 (2009).

4                **FIVE STEP SEQUENTIAL EVALUATION PROCESS**

5            A claimant must satisfy two conditions to be considered "disabled" within

6    the meaning of the Social Security Act.  First, the claimant must be unable "to

7    engage in any substantial gainful activity by reason of any medically determinable

8    physical or mental impairment which can be expected to result in death or which

9    has lasted or can be expected to last for a continuous period of not less than 12

10   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

11   impairment must be "of such severity that [he or she] is not only unable to do [his

12   or her] previous work[,] but cannot, considering [his or her] age, education, and

13   work experience, engage in any other kind of substantial gainful work which exists

14   in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

15           The Commissioner has established a five-step sequential analysis to

16   determine whether a claimant satisfies the above criteria.  *See* 20 §§

17   404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

18   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

19   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

20

1  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

2  404.1520(b), 416.920(b).

3      If the claimant is not engaged in substantial gainful activities, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

6  claimant suffers from "any impairment or combination of impairments which

7  significantly limits [his or her] physical or mental ability to do basic work

8  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

9  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

10  however, the Commissioner must find that the claimant is not disabled.  *Id.*

11      At step three, the Commissioner compares the claimant's impairment to

12  several impairments recognized by the Commissioner to be so severe as to

13  preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

14  404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

15  severe than one of the enumerated impairments, the Commissioner must find the

16  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

17      If the severity of the claimant's impairment does meet or exceed the severity

18  of the enumerated impairments, the Commissioner must pause to assess the

19  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

4    capable of performing other work; and (2) such work "exists in significant

5    numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);

6    *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7                                   **ALJ'S FINDINGS**

8    On October 27, 2021, Plaintiff filed an application for Title II disability

9    insurance benefits and Title XVI supplemental security income benefits, alleging

10   an onset date July 1, 2021.  Tr. 77.  The application was initially denied and denied

11   again on reconsideration.  *Id.*  An administrative law judge ("ALJ") held a

12   telephonic hearing on December 7, 2023.  *Id.*  The ALJ denied Plaintiff's claim on

13   January 29, 2024.  Tr. 89.

14   As a threshold matter, the ALJ found Plaintiff would meet the insured status

15   requirements of the Social Security Act through December 31, 2022.  Tr. 77.  At

16   step one of the sequential evaluation analysis, the ALJ found Plaintiff had not

17   engaged in substantial gainful activity after July 1, 2021, the alleged onset date.

18   Tr. 79.  At step two, the ALJ found Plaintiff had the following severe impairments:

19   amblyopia of the right eye, osteoarthritis of the knees, obesity, major depressive

20   disorder, anxiety disorder, and attention deficit hyperactivity disorder ("ADHD").

Tr. 80.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 81.  The ALJ then found Plaintiff had a residual functional capacity to perform medium work with the following limitations:

> Postural activities can be performed frequently, but [Plaintiff] cannot climb ladders, ropes, or scaffolds.  There should be no commercial driving.  He should avoid all exposure to hazards such as dangerous moving machinery and unprotected heights.  He is able to perform goal-oriented work, but no assembly-line or similar fast-paced work.

Tr. 83.

At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 88.  At step five, the ALJ found, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a kitchen helper, laundry worker, and industrial cleaner.  Tr. 88-89.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from July 1, 2021 through January 29, 2024, the date of the ALJ's decision.  Tr. 89.

On November 26, 2024, the Appeals Council denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  20 C.F.R. §§ 404.981, 416.1484, and 422.210.

**ISSUES**

Plaintiff raises four issues for review:

1.  Whether the ALJ erred in concluding Plaintiff did not have a medically determinable back impairment?

2.  Whether the ALJ erred in evaluating the medical opinions?

3.  Whether the ALJ erred in rejecting Plaintiff's subjective testimony?

4.  Whether the ALJ erred in evaluating step five?

**DISCUSSION**

**A. The ALJ did not err in concluding Plaintiff did not have a medically determinable back impairment at step two.**

At step two, the burden lays with Plaintiff to establish that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yucket*, 482 U.S. 137, 146-147 (1987); *see also* 20 C.F.R. § 404.1520(c). "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and the Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921. However, a medical diagnosis alone does not make an impairment qualify as "severe." *Mathews v. Shalala*, 10 F.3d 678 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a

ORDER GRANTING DEFENDANT'S OPENING BRIEF ~ 8

disability.").  Moreover, an impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original).  If an ALJ fails to list a medically determinable impairment at step two but considers the limitations presented by the impairment at step four, an error at step two is harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff argues the ALJ improperly dismissed Plaintiff's lower back issue as a groundless complaint.  ECF No. 9 at 8.  In her decision, the ALJ concluded that the medical evidence did not support a spine impairment for the following reasons:

> There are no reports of imaging studies showing degenerative changes in the claimant's lumbar spine or hands.  Examinations since the alleged onset date show that the claimant has normal range of motion in his spine, good grip strength, and good dexterity (Ex. 2F/11; 6F/4-5).  A finding of disability cannot be based on a symptom or combination of symptoms unless there are medical signs and clinical findings demonstrating the existence of a medically determinable physical or mental impairment (20 CFR 404.1521, 416.921).  Because the claimant's alleged back problems and hand arthritis are not medically determinable, they cannot be the basis of a finding that he is disabled.

Tr. 80-81 (citing Tr. 395, 667-668).

Plaintiff contends that findings in the record contradict the ALJ's conclusion.  Plaintiff first points to an examination by physician, Ryan Agostinelli ("Mr. Agostinelli"), in March 2022 revealing "moderate palpable tenderness" upon

examination of the lumbar spine (Tr. 666).  ECF No. 9 at 8.  Second, Plaintiff points to additional records submitted to the Appeals Council as part of Plaintiff's request for review including an x-ray from April 2023 that revealed ventral wedging deformity and degenerative changes in Plaintiff's spine, and physical therapy treatment notes from May 2023 documenting tenderness to palpation at left PSIS, SI joint dysfunction, and a leg length discrepancy.  *Id.*; Tr. 129-131.  Plaintiff argues this evidence establishes that Plaintiff had a medically determinable back impairment contrary to the ALJ's conclusion and the ALJ's failure to account for any of the limitations caused by Plaintiff's back impairment was legal error.  The Court disagrees.

First, Mr. Agostinelli's examination of Plaintiff did not contradict the ALJ's finding that Plaintiff was not diagnosed with a spine impairment.  Mr. Agostinelli's description that Plaintiff had "moderate palpable tenderness" upon examination of the lumbar spine region was not a medical diagnosis of a spine impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.").  Notably, Mr. Agostinelli also reported during the same examination that there were no spasms and no palpable bony deformity.  Tr. 666.  Finally, the remainder of Mr. Agostinelli's examination notes do not address any functional limitations related to Plaintiff's back pain.  Plaintiff does not point to

1    any other objective findings in the record related to Plaintiff's back pain at the time

2    the ALJ rendered her decision, nor any evidence that Plaintiff's back pain

3    significantly limited his ability to perform basic work activities.  Thus, reviewing

4    the records that were before the ALJ at the time of her decision, the ALJ properly

5    found that Plaintiff's back pain was not a medically determinable impairment.

6        As for any evidence submitted for the first time to the Appeals Council, the

7    Ninth Circuit has held such evidence "becomes part of the administrative record,

8    which the district court must consider when reviewing the Commissioner's final

9    decision for substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d

10   1157, 1163 (9th Cir. 2012).  Here, Plaintiff relies on two records that were

11   submitted to the Appeals Council.  The first is an x-ray of Plaintiff's lumbar spine

12   taken on April 13, 2023 indicating a minimal chronic ventral wedging deformity of

13   T12 and minimal degenerative changes at L5-S1.  Tr. 120.  The second record is

14   therapy treatment notes from an evaluation in May 2023 that revealed tenderness

15   to palpation at the left PSIS, reduced strength in Plaintiff's left hip internal and

16   external rotation, and SI joint dysfunction.  Tr. 129, 131.

17       The Court does not find these additional records warrants remand.  Even if

18   the records supported a medically determinable back impairment, they do not

19   demonstrate a severe impairment or indicate any functional limitations beyond

20   what the ALJ found in the RFC, nor does Plaintiff make any argument on how the

records evidence limitations the RFC failed to account for. The bulk of the therapy treatment notes indicated Plaintiff had normal mobility and mobility ambulation, intact lower extremity sensation, and normal left lower extremity strength other than the slightly reduced strength in Plaintiff's hip external and internal rotation. Tr. 129-130.

Furthermore, even if the ALJ did err in failing to find Plaintiff had a medically determinable back impairment, such an error was harmless. The ALJ resolved step two in Plaintiff's favor by designating other specific impairments as severe thereby requiring the ALJ to consider all the symptoms in developing the RFC. *See Lewis*, 498 F.3d at 911. The ALJ considered Plaintiff's allegations that he could not stand for long periods of time and could not sit for longer than two hours without his back hurting and his legs becoming numb. Tr. 84. The ALJ also noted that Plaintiff claimed the pain worsened with movements such as lifting, squatting, bending, kneeling and climbing stairs. *Id.* The ALJ adequately considered Plaintiff's reported limitations due to his back impairment.

## B. The ALJ did not err in evaluating the medical opinions of Dr. Genthe and Mr. Agostinelli.

Plaintiff next argues the ALJ improperly rejected the medical opinions of Dr. Genthe and Mr. Agostinelli.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867-68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). These factors are explained as follows:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). As a result, the ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.*

*1. Dr. Genthe*

Dr. Genthe performed a psychiatric evaluation via telephone of Plaintiff on September 27, 2021. Tr. 546. Dr. Genthe diagnosed Plaintiff with major depressive order, social anxiety disorder, attention-deficit/hyperactivity disorder, other specified personality disorder, and a mild intellectual disability. Tr. 549. Dr.

Genthe opined that Plaintiff had marked limitations in the following basic work activities: understanding, remembering, and persisting in tasks by following detailed instructions; adapting to changes in a routine work setting; communicating and performing effectively in a work setting; maintaining appropriate behavior in a work setting; and completing a normal work day and work week without interruptions from psychologically based symptoms.  Tr. 549.  Dr. Genthe also opined Plaintiff had the moderate limitations in the following basic work activities: performing activities within a schedule, maintaining regular attendance, and being punctual; learning new tasks; performing routine tasks without special supervision; being aware of normal hazards and taking appropriate precautions; asking simple questions or requesting assistance; and setting realistic goals and planning independently.  Tr. 549.  Dr. Genthe rated the overall level of severity of Plaintiff's mental impairments to be marked.  *Id.*

The ALJ found that Dr. Genthe's opinion was not persuasive in part because it was not supported by his own examination.

> He did not record any objective findings suggesting that the claimant cannot communicate effectively, or behave appropriately, or manage change.  He did not record findings suggesting that the claimant has any mental barriers to recognizing hazards, or that he needs special supervision to perform routine tasks.  Instead, Dr. Genthe found that the claimant was open, cooperative, and friendly, with clear and fluent speech.  He found that the claimant's responses to questions were overinclusive, but his thought processes were logical.  He found that the claimant understood instructions (Ex. 4F/6-7) . . . . Furthermore the claimant informed Dr. Genthe that he independently manages his

1    medications and appointments, does daily chores, prepares meals, and
2    shops for necessities (Ex. 4F/2-3).

3    Tr. 87 (citing Tr. 547-548).

4        Plaintiff first asserts the ALJ erroneously concluded that Dr. Genthe's opinion
5    was not supported by his own examination because Dr. Genthe observed deficits in
6    Plaintiff's memory, fund of knowledge, concentration, abstract thought, insight, and
7    judgment.  ECF No. 9 at 11.  Dr. Genthe also noted abnormalities in mood, speech,
8    and thought process.  Plaintiff argues these findings support the limitations assessed.
9    *Id.*

10       The ALJ's reasoning was substantially supported.  Dr. Genthe's opinion had
11   some internal inconsistencies.  He indicated Plaintiff had marked limitations in
12   communicating effectively, behaving appropriately, and managing change (Tr.
13   549), however, observed Plaintiff "speaking at a normal rate, with normal
14   inflections" and noted that the "reciprocal flow of the conversation was still
15   balanced" and Plaintiff "articulated his words clearly," although he provided
16   excessive detail and was delayed in reaching the point.  Tr. 551.  Dr. Genthe also
17   observed Plaintiff to be "generally open, cooperative and friendly, appearing
18   relatively genuine in his responses" and was motivated in "changing his current
19   circumstances for the better."  *Id.*  Dr. Genthe also indicated a moderate limitation
20   in performing routine tasks without supervision but reported that Plaintiff

ORDER GRANTING DEFENDANT'S OPENING BRIEF ~ 16

"understood instruction given during the mental status examination, and/or testing and appeared attentive and interested in doing his best," yet, Dr. Genthe later noted that Plaintiff had significant difficulty in following the conversation.  Tr. 549, 551, 552.  Plaintiff reporting to Dr. Genthe of his ability to take care of himself and complete daily chores also undermines Dr. Genthe's indicated limitation in Plaintiff's ability to repeat routine tasks.  Therefore, substantial evidence supported the ALJ's reasoning in finding Dr. Genthe's opinion was not supported by his own objective observations.

Plaintiff next argues the ALJ's conclusion that Dr. Genthe's opinion was inconsistent with the remaining record was vague and inadequately supported. ECF No. 9 at 12-13.  In concluding Dr. Genthe's was inconsistent with the longitudinal record and other examinations, the ALJ provided a one sentence explanation that the "benign findings are similar to the mental findings recorded by the claimant's doctor (Ex. 2F/30; 3F/26; 7F/12)."  Tr. 87.

The Court does not find the cited records substantially support the ALJ's conclusion that Dr. Genthe's opinion was inconsistent with the longitudinal record. The first cited record was from an office visit Plaintiff had with his primary care physician on December 14, 2021 that was related to knee pain.  Tr. 413-141.  The only mental status reported was that Plaintiff was awake, alert and oriented, and was cooperative with appropriate mood and affect.  Tr. 414.  The second cited

record was a therapy progress note from May 3, 2021, nearly two months prior to the alleged onset date, reporting that "Client is well oriented.  Thoughts were organized and absent unusual content.  Speech was well organized and goal directed."  Tr.  529.  And the third cited record was from a visit Plaintiff had with his primary care physician on November 2, 2022 where the only mental status finding reported was that Plaintiff was "alert and oriented."  Tr. 681.  The Court agrees with Plaintiff that these records do not substantially support the ALJ's reasoning, but nevertheless concludes such an error was harmless as the ALJ did adequately address her supportability finding.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("An ALJ cannot reject an examining or treating doctor's opinion as unsupported *or* inconsistent without providing an explanation supported by substantial evidence.") (emphasis added); *see also Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023) (unpublished) ("As required, the ALJ considered both the 'supportability' and 'consistency' of Dr. Gritzka's opinion . . . finding it unpersuasive because while the opinion was supported by examination notes, it was 'not consistent with the longitudinal evidence of record.' ".); Tracy F. v. O'Malley, No. 1:22-cv-00233-DCN-DKG, 2024 WL 1701572, at *5 (D. Idaho Apr. 19, 2024) ("Because substantial evidence supported the ALJ's inconsistency finding with respect to Dr. Dennis and NP

Gayle's opinions, the ALJ's error in failing to address the supportability factor was harmless with respect to such opinions.").

### 2. Mr. Agostinelli

Mr. Agostinelli performed a functional assessment of Plaintiff on March 26, 2022 and opined that Plaintiff could walk or stand four hours per eight-hour work day, could sit six to eight hours per eight-hour work day, could lift thirty-five pounds occasionally and ten pounds frequently, had moderate to significant limitation to bending, stooping, and kneeling due to knee pains, and should avoid manual labor and tasks requiring significant focus. Tr. 668. The ALJ found the opinion not persuasive and first reasoned it was not supported by the findings during Mr. Agostinelli's own exam, "as he did not find any acute physical deficits during the examination. On the contrary, he recorded findings of normal gait, strength, sensation, reflexes, and range of motion (Ex. 6F/3-5)." Tr. 86. The ALJ also noted that Mr. Agostinelli's "assessment of postural limitations is vague because he did not define his meaning of 'moderate to significant' in vocational terms." *Id.*

Plaintiff asserts that Mr. Agostinelli's opinion was supported by his findings including his observation that Plaintiff had palpable tenderness in the abdomen and lumbar spine region, poor sensory discrimination in both hands, and generalized

pain throughout much of the range of motion and strength testing.  ECF No. 9 at 15.  The Court disagrees.

In concluding Mr. Agostinelli's opinion was unpersuasive, the ALJ focused in on Mr. Agostinelli's findings that Plaintiff had "moderate to significant limitation" in bending, stooping, and kneeling.  Tr. 86.  Mr. Agostinelli reported largely normal findings with some scattered abnormalities.  Notably he reported Plaintiff as having 5/5 motor strength across all motor groups, normal gait with no unsteadiness and the ability to sit and stand without assistance, and normal upper and lower extremities with the exception of joints.  Tr. 667.  Mr. Agostinelli's summary of the examination was that it was normal other than Plaintiff's reported generalized pain throughout his range of motion and strength testing, however, he also noted that it was "nothing of concern" and that Plaintiff "holds his increased body weight without difficulty when walking."  Tr. 669.  Additionally, Mr. Agostinelli's examination revealing tenderness in Plaintiff's abdomen and poor sensory discrimination in both of Plaintiff's hands does not support his reported degree of limitation in Plaintiff's ability to bend, stoop, or kneel.  Therefore, the ALJ's supportability finding was not error.

As for the consistency factor, the ALJ concluded Mr. Agostinelli's opinion was "not consistent with the longitudinal record, since his normal findings were similar to those recorded by the claimant's own healthcare providers (Ex. 2F/32;

7F/16).” Tr. 85 (citing Tr. 416, 685).  The first cited record, from September 2021, reported Plaintiff with full strength in the upper and lower extremities and intact sensation.  Tr. 416.  And the second record, from November 2022, reported Plaintiff as having full range of motion of the upper and lower extremities, no signs of trauma in the lower extremities, full strength in the bilateral upper and lower extremities, and intact sensation.  Tr. 685.

Plaintiff argues the ALJ failed to adequately explain why these records were inconsistent with Mr. Agostinelli's limitations.  Tr. 685.  While the ALJ's citation to two pages of the record as support that Mr. Agostinelli's opinion is inconsistent with the longitudinal of the record is a bit broad and vague, as the Court previously explained, an ALJ may discount a medical opinion as either unsupported or inconsistent.  Thus, since the ALJ properly discounted Mr. Agostinelli's opinion as unsupported, any error in addressing the consistency factor is harmless.

**C. The ALJ did not err in discounting Plaintiff's subjective testimony.**

Plaintiff argues the ALJ improperly rejected Plaintiff's subjective testimony. ECF No. 9 at 16.  Plaintiff cites four assertions the ALJ relied on in discounting Plaintiff's testimony that Plaintiff contends were not supported by clear and convincing reasons: (1) Plaintiff's alleged mental limitations were not supported by the objective evidence; (2) Plaintiff's alleged physical limitations were not supported by the objective evidence; (3) Plaintiff's physical impairments improved

1    significantly with conservative treatment; and (4) Plaintiff's vision loss did not

2    prevent him from accomplishing his daily activities. *Id* at 17.

3        An ALJ engages in a two-step analysis to determine whether to discount a

4    claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL

5    1119029, at *2. "First, the ALJ must determine whether there is 'objective

6    medical evidence of an underlying impairment which could reasonably be

7    expected to produce the pain or other symptoms alleged.'" *Molina*, 674 F.3d at

8    1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "The

9    claimant is not required to show that [the claimant's] impairment 'could reasonably

10   be expected to cause the severity of the symptom [the claimant] has alleged; [the

11   claimant] need only show that it could reasonably have caused some degree of the

12   symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

13   1028, 1035-36 (9th Cir. 2007)).

14       Second, "[i]f the claimant meets the first test and there is no evidence of

15   malingering, the ALJ can only reject the claimant's testimony about the severity of

16   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

17   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

18   omitted). General findings are insufficient; rather, the ALJ must identify what

19   symptom claims are being discounted and what evidence undermines these claims.

20   *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why he or she discounted claimant's symptom claims). "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

*Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include:

> (1) daily activities; (2) the location, duration, frequency, and intensity
> of pain or other symptoms; (3) factors that precipitate and aggravate the
> symptoms; (4) the type, dosage, effectiveness, and side effects of any
> medication an individual takes or has taken to alleviate pain or other
> symptoms; (5) treatment, other than medication, an individual receives
> or has received for relief of pain or other symptoms; (6) any measures
> other than treatment an individual uses or has used to relieve pain or
> other symptoms; and (7) any other factors concerning an individual's
> functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ is instructed to "consider all of the evidence in an individual's record,"

"to determine how symptoms limit ability to perform work-related activities."

SSR 16-3p, 2016 WL 1119029, at *2.

If the ALJ determines that a plaintiff's subjective testimony is not creditable,

the ALJ "must specifically make findings that support this conclusion," and the

findings "must be sufficiently specific to allow a reviewing court to conclude the

[ALJ] rejected the claimant's testimony on permissible grounds and did not

1  arbitrarily discredit [the] claimant's testimony." *Rollins v. Massanari*, 261 F.3d

2  853, 856–57 (9th Cir. 2001).  While an ALJ may not discount subjective testimony

3  only because it is not supported by objective medical evidence, such medical

4  evidence is still a relevant factor in determining the severity of a plaintiff's pain

5  and its disabling effects.  *Id.* (citing 20 C.F.R. § 404.1529(c)(2)).

6      *1. Plaintiff's mental limitations*

7          The ALJ summarized Plaintiff's alleged symptoms of his mental

8  impairments to include having anxiety around other people, limits in concentration,

9  memory, and ability to handle stress.  Tr. 84.  The ALJ then concluded that while

10  Plaintiff's medically determinable impairments could reasonably be expected to

11  cause the alleged symptoms, Plaintiff's alleged intensity, degree, and persistence of

12  those symptoms were not entirely consistent with the objective medical findings

13  and other evidence in the record.

14      The claimant has been treated for ADHD since his teens.  His symptoms
       respond well to medication (Ex. 2F/29; 6F/2; 7F/15, 19).  Since at least
15      2021, the claimant has also received treatment for symptoms of anxiety
       and depression, including sadness, anger, irritability, worry, diminished
16      interest in activities, low self-esteem, and appetite changes.  He
       reported those symptoms to the independent examiner, Thomas Genthe,
17      Ph.D., in September 2021 (Ex. 2F/29; 4F/1-3; 7F/12).

18      In the claimant's visits to his own providers, he has been alert, oriented,
       and cooperative, with organized and goal-directed thought processes,
19      and appropriate thought content, and normal speech (Ex. 2F/29; 4F/1-
       3; 7F/12).

20  Tr. 85 (citing Tr. 413, 665, 684, 688, 546-548, 681, 414, 521, 529).

ORDER GRANTING DEFENDANT'S OPENING BRIEF ~ 24

1    The ALJ also cited heavily to Dr. Genthe's examination of Plaintiff.

2        In the independent examination, Dr. Genthe noted that the claimant's
3        thought processes were somewhat tangential and circumstantial, in that
         he gave an excessive amount of detail in response to questions. Testing
4        indicated deficits in delayed recall, concentration, and abstraction. The
         claimant recalled one of four objects after a five-minute delay. He
5        could not do a multiplication problem, and he was unable to interpret a
         common proverb. Dr. Genthe also found that the claimant's insight and
6        judgment were limited. However, the claimant's speech was fluent and
         clear. He was cooperative, friendly, attentive, interested, and genuine
7        in his responses to questions. He understood the instructions Dr.
         Genthe gave him. He demonstrated intact immediate and remote
8        memory. Although his thought processes were somewhat
         circumstantial, they were logical and goal-directed (Ex. 4F/7). This
9        evidence will not support a determination that the claimant is mentally
         disabled.

10   Tr. 85 (citing Tr. 552).

11       Plaintiff argues the ALJ improperly rejected Plaintiff's reported symptoms

12   as simply not being substantiated by the objective medical evidence. ECF No. 9 at

13   17. However, the ALJ relied on objective medical evidence that was inconsistent

14   with the severity of at least some of Plaintiff's alleged symptoms in addition to

15   concluding the alleged symptoms were not supported by objective medical

16   evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective

17   medical evidence in the record is *inconsistent* with the claimant's subjective

18   testimony, the ALJ may indeed weigh it as undercutting such testimony.").

19       For example, the ALJ cited to records indicating Plaintiff had been treated

20   for ADHD since his teens and his symptoms responded well to medication

including his ability to focus.  Tr. 413, 684, 665, 688.  The same treatment notes also indicated Plaintiff was taking medication for his depression and was reporting some improvement upon screening.  Tr. 413, 665, 685, 689.

Plaintiff also relies on Dr. Genthe's mental status examination in arguing his subjective testimony was supported by the medical record.  ECF No. 9 at 17. However, the ALJ concluded Dr. Genthe's findings would not support a determination that Plaintiff is mentally disabled because while he reported Plaintiff with some deficits in delayed, recall, concentration, and abstraction, Dr. Genthe noted Plaintiff's speech was fluent and clear, he was cooperative, friendly, attentive, interested, genuine in his responses, understood instructions, and had thought processes that were logical and goal-directed.  Tr. 85 (citing Tr. 551-552).

The Court finds the ALJ offered sufficient clear and convincing evidence in discounting Plaintiff's subjective testimony related to his mental impairments.

*2. Plaintiff's physical limitations*

The ALJ identified Plaintiff's reported physical limitations including that his vision loss in his right eye affected his ability to drive, his knee pain restricted most activities, he could not stand for long periods of time and needed a break after walking 60 feet, he could not sit for longer than two hours without his back and legs going numb, and his pain was worse with movements such as bending, lifting, squatting, kneeling, and climbing stairs.  Tr. 84.  The ALJ again concluded the

1  degree of Plaintiff's alleged limitations due to his physical impairments were not

2  consistent with the evidence of the record.  *Id.*

3        First, the ALJ found that while Plaintiff had longstanding right-eye vision

4  loss that prevented him from doing any commercial driving, his left eye was fully

5  functional with 20/20 vision while wearing glasses.  Tr. 84. (citing Tr. 308-315,

6  292-293, 701-705).  Additionally, the ALJ found that Plaintiff had held various

7  jobs over the years despite the vision loss in one eye, could still accomplish his

8  activities of daily living, and reported that he could still drive which was supported

9  by the fact he had minor injuries from a rollover accident while driving an off-road

10  vehicle in 2020.  *Id.* (citing Tr. 318-325, 348-355, 386-387).  Plaintiff argues that

11  the ALJ failed to demonstrate how Plaintiff's activities of daily living were

12  inconsistent with Plaintiff's subjective testimony.  The Court again disagrees.

13  Some of the evidence of Plaintiff's activities of daily living, specifically his ability

14  to drive, were inconsistent with Plaintiff's testimony that he did not really drive

15  because of his vision.  Tr. 141.  Moreover, the ALJ relied on this evidence to

16  support her conclusion that Plaintiff's vision loss did not prevent him from

17  working or his ability to work as Plaintiff argued.  Tr. 84.

18        The ALJ also addressed Plaintiff's chronic knee pain and concluded that

19  while treatment notes reported knee-joint tenderness after the alleged onset date, x-

20  rays taken in 2021 did not show any significant abnormalities beyond "minimal"

degenerative spurring in both knees.  Tr. 84 (citing Tr. 443).  Furthermore, the mild

arthritis in the knees had not resulted in a loss of motor function and Plaintiff's

providers reported normal strength, range of motion, no edema in his extremities,

and intact sensation and reflexes.  *Id.* (citing Tr. 443, 395, 419-420, 681, 685).

Finally, the ALJ noted that treatment of Plaintiff's knee pain had been conservative

and that he reported significant relief with a knee braces back in 2021.  *Id.* (citing

Tr. 413, 416).  Additionally, obesity was found to be a contributing factor to

Plaintiff's knee pain and weight loss was recommended.  *Id.* (citing Tr. 414, 416).

Plaintiff argues that the ALJ relying on a single report in concluding

Plaintiff's knee pain significantly improved with treatment did not substantially

support the ALJ's finding that the degree of Plaintiff's alleged limitations were

inconsistent with the record.  ECF No. 9 at 18.  However, the ALJ did not rely on a

single report but pointed to multiple treatment records that were inconsistent with

Plaintiff's subjective symptom testimony.  Taking into consideration all the

evidence the ALJ relied on in discounting Plaintiff's subjective reporting of his

knee pain, the Court finds the ALJ's reasoning was substantially supported.

Finally, the ALJ discounted Plaintiff's subjective symptom testimony as to

his back pain primarily relying on the normal findings of Mr. Agostinelli's

examination of Plaintiff on March 26, 2022.  Tr. 84 (citing Tr. 665-668).  As the

Court previously explained, the record does not support a back limitation beyond

the ALJ's determined RFC.  The x-ray of Plaintiff's spine and Mr. Agostinelli's examination present both abnormal and normal findings, and the ALJ adequately discounted Mr. Agostinelli's opinion as to the extent of Plaintiff's limitations related to his back pain.  Therefore, the Court finds the ALJ substantially supported discounting Plaintiff's subjective symptom testimony as to his back impairment.

As for Plaintiff's challenge to the ALJ's determination at step five, because the Court concludes the ALJ did not err at steps one through four of the disability determination, the ALJ accordingly did not err at step five by presenting an incomplete hypothetical to the vocational expert.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Opening Brief (ECF No. 9) is **DENIED**.

2.  Defendant's Opening Brief (ECF No. 17) is **GRANTED**.

The District Court Executive is directed to enter this Order and Judgment, furnish copies to counsel, and **CLOSE** the file.

DATED September 24, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S OPENING BRIEF ~ 29